# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : |
| Plaintiff, | : <br> : |
| v. | : **COMPLAINT – CLASS ACTION** <br> : |
| PINI INSURANCE, LLC, and <br> LEADZER INSURANCE SERVICES, | : <br> : **JURY TRIAL DEMANDED** <br> : |
| Defendants. | : <br> : <br> : |

Plaintiff KELLY PINN (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff Kelly Pinn is an individual located in the Northern District of Texas.

7. Defendant Pini Insurance, LLC is a Miami, Florida company that makes telemarketing calls from this District itself and through its vendors.

8. Defendant Leadzer Insurance Services is one of Pini's vendors and is located and has its place of business in Knoxville, Tennessee.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

10. This Court has general personal jurisdiction over Pini because Pini is headquartered and has its principal place of business in Miami, Florida. This Court has specific personal jurisdiction over Leadzer because it contracted with Pini here to place the illegal telemarketing calls nationwide.

11. Venue is proper pursuant to 28 U.S.C. § 1391 because the telephone calls at issue were sent from this District.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

3

13. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

17. Defendant Pini is a "person" as the term is defined by 47 U.S.C. § 153(39).

18. Defendant Leadzer is a "person" as the term is defined by 47 U.S.C. § 153(39).

19. Plaintiff Pinn is also a "person" as the term is defined by 47 U.S.C. § 153(39).

20. At no point has the Plaintiff consented to receive telemarketing calls regarding Defendants' goods or services prior to receiving the calls at issue.

Calls to Plaintiff

21. Ms. Pinn's residential telephone number is (817) XXX-XXXX.

22. That telephone number is a residential telephone line used by Ms. Pinn for personal calls and for personal, family, and household use.

4

23. The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

24. That telephone number is not associated with a business.

25. Despite that, Mr. Pinn received at least 10 automated calls from various "spoofed" caller IDs all beginning with the 817 area code, a random NXX code usually beginning with 9, and a random last four digits between September 1, 2023 and November 14, 2023.

26. Plaintiff never consented to receive calls from Defendants.

27. Plaintiff never did business with the Defendants.

28. Each call started with silence before a "bloop" sound and an agent joining the line. This sound is indicative of the ViciDial autodialer and is officially known as the "droplet" sound. It is played automatically as part of a macro when the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative.

29.

30. During each of these ten calls, after the "bloop" sound played, an individual came on the line claiming to be from the generically but uniquely named "Nationwide Health Insurance."

31. Each call used a nearly identical script, pitching the Plaintiff free "zero dollar" health insurance.

32. At least three of the calls came from an individual with an identical voice named "Sarah."

33. At least four of the calls came from an individual with an identical voice named "Peter Piper."

34. All the calls were made in an attempt to sell the Plaintiff health insurance.

35. On November 14, 2023 at 2:35 PM, the Plaintiff received a call from the "spoofed" caller ID 817-481-7701, and spoke to "Peter Piper." The call then connected to "Christopher" with the "Enrolment Centre."

36. Christopher attempted to sell the Plaintiff a low-cost health insurance plan for less than $100 a month that had a $0 deductible and $0 co-pay and stated that he would comparison shop quotes for the Plaintiff.

37. When "Christopher" was pressed as to his identity, Christopher revealed that his real name was Christopher Vazquez with Defendant Pini.

38. Mr. Vazquez also provided the Plaintiff with Defendant Pini's website, telephone number 305-420-6022, and license number.

39. When Plaintiff inquired as to Mr. Vazquez why she received the aforementioned illegal calls, Mr. Vazquez stated that he purchased the call as a live transfer call from Defendant Leadzer and that he had hired Leadzer to generate leads.

40. When Plaintiff contacted Leadzer, its managing partner, Jimmy Kelly, AKA Christopher Kelly, stated that it hired a call center in Pakistan called 7Tel Solutions to make the calls, and provided only a WhatsApp contact for an individual named "Waqas," who presumably is the real name for "Peter Piper."

41. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42. The FCC has instructed that sellers such as Pini may not avoid liability by outsourcing telemarketing to third parties, such as Leadzer:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

43. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

44. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45. Pini is liable for telemarketing calls placed by Leadzer and transferred to Pini to generate customers for Pini, including the Plaintiff.

46. Pini was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

47. To do so, it hired Leadzer to orchestrate an *en masse* telemarketing campaign.

48. Pini controlled the day-to-day activities of Leadzer by providing the specific criteria for the leads it would accept and required its vendors, including Leadzer, to adhere to those criteria.

49. Pini would not compensate Leadzer for a call it made unless the leads met the criteria.

50. For example, Pini instructed Leadzer to ask potential customers if they were under 65 and therefore only eligible for private health insurance it was selling, not Medicare. Pini also instructed Leadzer to use a script promising "zero dollar" health insurance to draw people in to speak with a representative.

51. As such, Pini controlled the content of Leadzer's telemarketing.

52. Finally, Pini could have terminated Leadzer.

53. It did not.

54. By virtue of identifying the leads that they would accept, Pini directed the content of the communications that Leadzer would use in their calling.

55. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the National Do Not Call Registry.

56. Indeed, Pini could have investigated if the transfers it received were on the National Do Not Call Registry.

57. It did not.

58. Pini hired Leadzer without a proper investigation and did not terminate them when they were informed of Leadzer's illegal calling conduct.

59. As such, they knowingly ratified Leadzer's conduct.

60. Pini also ratified Leadzer's conduct because, with the ability to know that the number they called was on the National Do Not Call Registry, they accepted the Plaintiff's lead.

61. Pini accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

62. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

63. Plaintiff's privacy has been violated by the above-described telemarketing calls.

64. Plaintiff never provided her consent or requested these calls.

65. The aforementioned calls to the Plaintiff were unwanted.

66. The calls were nonconsensual encounters.

67. In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

68. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## **CLASS ACTION ALLEGATIONS**

69. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

70. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Pini or Leadzer, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

71. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as she has no interests that conflict with any of the class members.

72. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

73. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

74. This Class Action Complaint seeks injunctive relief and money damages.

75. The Class as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

76. Plaintiff does not know the exact number of members in the Class but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

77. The joinder of all Class members is impracticable due to the size of the Class and relatively modest value of each individual claim.

78. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

79. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (b) whether Defendants' conduct constitutes a violation of the TCPA;

    (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

    (d) whether Defendant Pini is vicariously liable for calls placed by telemarketing vendors, if any.

80. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

81. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

82. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

83. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the Robocall Class**

84. Plaintiff incorporates the allegations in paragraphs 1-83 as if fully set forth herein.

85. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class delivering automated messages.

86. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

87. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

88. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers on the National Do Not Call Registry advertising their goods or services in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: February 27, 2024

PLAINTIFF, individually and on behalf of all others similarly situated,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Counsel for Plaintiff and the proposed class*